FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 11, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

MIRANDA M.,[1]

        Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,

        Defendant.

No.    2:25-cv-434-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Miranda M. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due to anxiety, depression, and the side

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

effects of her medication for hemolytic anemia. Substantial evidence does not support the ALJ's evaluation of the medical opinions. These errors impacted the nondisability determination. This matter is remanded for further proceedings.

## I.    Background

Plaintiff had been receiving Title 16 benefits since June 29, 2012, due to hemolytic anemia, a blood disorder that makes red blood cells break down faster than the body can replace them.[2] In November 2022, the Administration determined that she was no longer disabled as of October 19, 2022.[3] Challenging this determination, Plaintiff requested a hearing before an ALJ, which was held by ALJ Marie Palachuk in September 2024.[4] There, Plaintiff testified that her medication prednisone improved some of her symptoms from hemolytic anemia because her red blood cell count remained stable, she no longer frequently passed out and forgot where she was, and she no longer had

[2] AR 108–23, 142–49.

[3] AR 151–52.

[4] AR 36–59.

DISPOSITIVE ORDER - 2

recurring hospitalizations for transfusions.[5] Prednisone, however, gave her side effects of fatigue, anxiety, panic attacks, depression, headaches, difficulty sleeping, "dozing off" during the day, and joint pain.[6] She suspected that her hands going numb throughout the day was also a long-term side effect of her medication, but she was waiting on a nerve conduction study for evaluation.[7]

The ALJ issued a decision finding Plaintiff no longer disabled.[8] The ALJ found Plaintiff's alleged symptoms were "not entirely

---

[5] AR 41–43.

[6] AR 43–48.

[7] AR 50–51.

[8] AR 14–35. Per 20 C.F.R. § 416.994(b)(5), a seven-step evaluation determines whether a claimant continues to be disabled. Step one establishes that the claimant is still disabled if she meets or medically equals a listed impairment. 20 C.F.R. § 416.994(b)(5)(i). Steps two through four evaluate whether there has been medical improvement related to the claimant's ability to work. *Id.* § 416.994(b)(5)(ii)–(iv). Steps five through seven establish that the claimant is no longer

consistent" with the medical evidence and other evidence.[9] As to the medical opinions, the ALJ found:

- the reviewing opinions of Ian Cowan, MD, Phillip Matar, MD, and Kent R., PhD, persuasive.

- the examining opinions of Dennis Dyck, PhD, and Lance Anders, ARNP, not persuasive.

- the treating opinion of Kyle Robles, PA-C, not persuasive.[10]

As to the seven-step sequential analysis for determining whether the claimant's disability continues, the ALJ found:

- Step one: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

disabled if her impairments are not severe, she can return to past work, or she can perform other work. *Id*. § 416.994(b)(5)(v)–(vii).

[9] AR 22. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[10] AR 26–27.

DISPOSITIVE ORDER - 4

- Step two: medical improvement occurred on October 19, 2022.

- Step three: the medical improvement was related to Plaintiff's ability to work.

- Step four: the disability analysis would continue under the first group of exceptions provided in 20 C.F.R. § 416.994(b)(3).

- Step five: Plaintiff had the severe impairments of hemolytic anemia, depression, and anxiety.

- Residual functional capacity (RFC): Plaintiff had the RFC to:

  perform medium work as defined in 20 CFR 416.967(c) with the following exceptions. The claimant can occasionally climb stairs, and ladders. The claimant should avoid concentrated exposure to extreme temperatures, respiratory irritants, and hazards (such as unprotected heights and dangerous moving machinery). The claimant is able to understand, remember and carry out simple, routine tasks and instructions. The claimant is able to maintain concentration, persistence and pace on simple tasks for two-hour intervals between regularly scheduled breaks.

- Step six: Plaintiff had no past relevant work.

- Step seven: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in

DISPOSITIVE ORDER - 5

significant numbers in the national economy, such as auto detailer, seed cutter, and lab equipment cleaner.[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[12] Plaintiff now appeals to district court.[13]

## II.    Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[14] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[15] and such error impacted the

---

[11] AR 19–29.

[12] AR 1–6.

[13] ECF No. 1.

[14] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

DISPOSITIVE ORDER - 6

nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

---

[16] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## III.   Analysis

Plaintiff argues substantial evidence does not support the RFC and nondisability decision because the ALJ improperly evaluated the medical opinions and rejected her subjective complaints. The Commissioner argues substantial evidence supports the RFC and the ALJ made no consequential error. As is explained below, the ALJ consequentially erred when evaluating the medical opinions, requiring remand for further proceedings.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ harmfully erred by rejecting the examining opinion of NP Anders and the treating opinion of PA Robles. She also contends the ALJ found State agency medical consultant Dr. R.'s reviewing opinion persuasive but neglected to incorporate into the RFC Dr. R.'s finding that Plaintiff's anxiety would impact her ability to maintain adequate attendance and complete a normal workday.

### 1. Standard

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[18] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[19] Supportability and consistency are the most important factors.[20] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[21]

---

[18] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[19] 20 C.F.R. § 416.920c(c)(1)–(5).

[20] *Id.* § 416.920c(b)(2).

[21] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

DISPOSITIVE ORDER - 9

## 2.    Lance Anders, ARNP

On October 7, 2023, NP Anders completed a psychological evaluation of Plaintiff.[22] NP Anders stated that Plaintiff reported the following regarding her depression and anxiety: (1) she had difficulty sleeping; (2) she had difficulty being in large crowds; (3) she isolated a lot at home; (4) past medication worsened her anxiety and depression and she was then only taking prednisone for her hemolytic anemia; (5) her blood disorder made her more depressed and anxious about her future, as going back to work and getting cut could be life-threatening; (6) she experienced panic attacks during the prior six months; (7) she was fatigued; (8) she had ongoing difficulty concentrating and completing daily activities; and (9) she has periods of paranoia approximately four times a year where she feels like someone is following and watching her.[23] NP Anders made the following observations on exam: (1) Plaintiff was easily distracted and needed mild redirection to stay on topic; (2) Plaintiff had "very positive" mood,

---

[22] AR 590–94.

[23] AR 590–92.

DISPOSITIVE ORDER - 10

was "very calm," and made "solid eye contact"; (3) Plaintiff was "mildly anxious and a little restless in her chair" but "she did not get up and walk around"; (4) Plaintiff could spell "world" forward and backward; and (5) Plaintiff "very easily" performed a three-step command to stand up, read a business card, and sit back down.[24]

NP Anders diagnosed Plaintiff with mild depression and moderate-to-severe anxiety, treatable with a strong likelihood of recovery within a year.[25] He opined that Plaintiff would have no difficulties performing simple and repetitive tasks, performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instructions, and dealing with the usual stress encountered in the workplace.[26] Plaintiff would, however, have difficulty maintaining regular attendance and completing a normal workweek without psychiatric interruptions

---

[24] AR 592–93.

[25] AR 594.

[26] AR 594.

DISPOSITIVE ORDER - 11

because of her panic attacks, isolating at home, and fear that someone was watching her.[27]

The ALJ found NP Anders' opinion not persuasive for the following reasons:

> The objective findings of Mr. Anders['] evaluation do not support this opinion. For example, while he noted the claimant was at times easily distracted and needed mild redirection to stay on topic, he found she could spell the word "world" forward and backward, as well as "easily" perform a three step command. He described her as being mildly anxious and to get a little restless in her chair, but did not get up and walk around. He noted she had solid eye contact, and her attitude was very positive and goal directed. This opinion is also not consistent with the overall objective medical evidence. For example, her primary care provider found during exams on February 23, 2024, and April 17, 2024, the claimant was alert and oriented times three, with appropriate mood, intact memory, and intact judgment ([AR 751, 756]).[28]

Accordingly, the ALJ did not include NP Anders' opined mental limitation in the RFC, instead limiting Plaintiff mentally only to simple tasks and working in two-hour intervals.[29]

---

[27] AR 594.

[28] AR 26.

[29] AR 21.

DISPOSITIVE ORDER - 12

### 3.    Kyle Robles, PA-C

PA Robles was Plaintiff's treating physician assistant who provided primary care at regular visits from May 2022 to June 2024.[30] He completed a questionnaire on June 20, 2024.[31] He reported the following: (1) Plaintiff's symptoms were joint pain, fatigue, dyspnea on exertion, and agitation; (2) she had to lie down and/or elevate her legs approximately twenty minutes a day because of joint pain caused by hemolytic anemia; (3) her prednisone caused side effects of hyperglycemia, insomnia, agitation, and fatigue; and (4) she had no manipulative limitations involving the upper extremities.[32] NP Anders provided the following opinions: (1) work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, explaining "excessive stress worsens condition"; (2) she would miss four days or more of work each month due to medical impairments, explaining "anemia can worsen [and] require hospitalization"; (3) she would be

---

[30] AR 548–72, 662–75, 724–67.

[31] AR 675–77.

[32] AR 675.

DISPOSITIVE ORDER - 13

limited to performing sedentary physical work; and (4) based on the cumulative effect of all limitations, she would likely be off task and unproductive over 30% of the time during the workweek.[33]

The ALJ found PA Robles' opinion "not persuasive, because it is speculative," explaining:

> For example, he noted her condition could worsen and require hospitalization but the medical evidence of record does not support that has happened during the period at issue, or will happen in this claimant's case. The claimant has been maintained on a dose of 10 mg of Prednisone during the period at issue, and she has not been hospitalized. Her oncologist noted on August 22, 2024 that her hematocrit remained stable, and there was no evidence of hemolysis ([AR 771]). The objective finding of the exams are not consistent with the opined severity of her limitations. For example, on August 22, 2024, she had no visible deformities with her extremities, no cyanosis, no clubbing, no edema, and her pulses were 4+ and equal bilaterally ([AR 770]). Her lungs were clear to auscultation without rhonchi or wheezing.[34]

Accordingly, the ALJ did not incorporate any of PA Robles' opinions from the questionnaire into the RFC.[35]

---

[33] AR 675–77.

[34] AR 26–27.

[35] AR 21.

DISPOSITIVE ORDER - 14

4.   Kent R., PhD

Dr. R., a psychologist, reviewed Plaintiff's medical records as part of the State agency's continuing disability review on November 16, 2023.[36] He opined that Plaintiff's mental impairments moderately limited her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without psychological interruptions; and perform at a consistent pace without unreasonable breaks.[37] Nevertheless, according to Dr. R., Plaintiff could carry out complex tasks consistently in a competitive work environment in two-hour intervals.[38] He concluded his opinion, "By report, the claimant does have limitations due to anxiety that would impact her ability to maintain adequate attendance and complete a

---

[36] AR 84–93.

[37] AR 93.

[38] AR 93.

DISPOSITIVE ORDER - 15

normal workday/workweek within normal tolerances of a competitive workplace, but these limits do not preclude her ability completely."[39]

The ALJ found Dr. R.'s opinion "persuasive, as it is supported by a review of the record with explanation, and it is consistent with the overall record, discussed above."[40] The ALJ incorporated into the RFC Dr. R.'s opinion that Plaintiff could maintain pace in two-hour intervals.[41] While Dr. R. opined Plaintiff could perform complex tasks, the ALJ limited Plaintiff to simple tasks.[42] The ALJ did not incorporate into the RFC any limitations specifically mentioning her ability to maintain attendance and complete a workday.

5.    Analysis

Here, substantial evidence does not support the ALJ's findings that the medical opinions were inconsistent with the overall record.

---

[39] AR 93.

[40] AR 27.

[41] AR 21.

[42] AR 21.

DISPOSITIVE ORDER - 16

Consequentially, substantial evidence does not support the RFC and the resulting nondisability determination.

The ALJ cited two records as evidence of NP Anders' opinion's inconsistency with the overall record: (1) a February 23, 2024 primary-care visit for treatment of vaginal lesions, with a familiar, routine note of Plaintiff's normal mental status during the physical exam: "Mental Status/Psych: judgement intact, AAO [(alert and oriented)] x 3, memory intact, mood appropriate"; and (2) an April 16, 2024 primary-care visit for investigating the cause of cervical radiculopathy and weakness in her hands, with the same mental-status note during the physical exam.[43]

Elsewhere in her decision, the ALJ discussed other mental-health records that she may have considered evidence of inconsistency: (1) a January 26, 2024 primary-care visit for a urinary tract infection and insomnia, with the mental-status note during the physical exam, "Mental Status/Psych: judgement intact, AAO x 3, memory intact"; (2) an April 30, 2024 primary-care visit for hand pain and insomnia,

---

[43] AR 751, 756. *See* AR 749–50, 754–55.

DISPOSITIVE ORDER - 17

with the same mental-status note during the physical exam; and (3) a July 1, 2024 primary-care visit for leg pain, with the same mental-status note during the physical exam except for no mention of her memory.[44]

Moving beyond the primary-care records, the ALJ also considered that Plaintiff only sought behavioral-health treatment in 2017 and in March 2024, with Plaintiff not seeking counseling or being psychiatrically hospitalized between these times.[45] The ALJ noted that during the intake for counseling in 2024, Plaintiff was well-dressed and well-groomed, her affect was broad, her mood was good, and she was oriented "times four."[46] At a June 6, 2024 counseling session, Plaintiff was cooperative and engaged, her mood was congruent, and her speech was appropriate.[47] Presumably referring to records of eight counseling

---

[44] AR 24–25 (citing AR 730, 745, 762).

[45] AR 25.

[46] AR 25 (citing AR 689).

[47] AR 25 (citing AR 681).

DISPOSITIVE ORDER - 18

sessions from March 8 to July 31, 2024,[48] the ALJ stated, "The undersigned notes that minimal objective findings were also noted during her counseling sessions."[49]

As the preceding report shows, the ALJ's consistency analysis relied entirely on normal mental-status findings during primary-care physical exams and Plaintiff's stable behavior at mental-health counseling. On this record, substantial evidence does not support the consistency analysis. The ALJ improperly cherry-picked the normal mental-health observations by giving undue weight to the normal mental-health findings during appointments for unrelated physical ailments.[50] Additionally, Plaintiff's cooperation and appearance in the

---

[48] AR 679–89.

[49] AR 25.

[50] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from other mental health professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone

DISPOSITIVE ORDER - 19

controlled, clinical environment of counseling sessions says little about her mental capacities when engaging in full-time competitive employment.[51] Nor does the ALJ's analysis capture the overall diagnostic picture of Plaintiff's frequent and severe anxiety, agitation, and insomnia.[52]

---

who is not a mental-health professional to document observations about the claimant's mental-health symptoms).

[51] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (Mental health observations must be "interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.").

[52] *See id.* ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed

To start, NP Anders' opinion is consistent with the other mental-health opinions from PA Robles and Dr. R.,[53] and with Plaintiff's testimony.[54] Further, Plaintiff regularly reported to her primary care provider of mental symptoms related to anxiety and side effects of prednisone. She established care with PA Robles in May 2022, who diagnosed her with agitation-PTSD and discussed her desire to avoid taking the antidepressant Wellbutrin.[55] Her mental judgment and insight was evaluated "fair to poor."[56] In January 2024, PA Robles started Plaintiff on hydroxyzine and ramelteon to treat insomnia due to mental disorder, and Plaintiff complained of depression, anxiety, and

considering the overall diagnostic record, and finding the ALJ erred by rejecting the claimant's anxiety, depression, and PTSD symptoms on the basis that the claimant performed cognitively well during examination and had a generally pleasant demeanor).

[53] AR 93, 675–77.

[54] AR 41–48.

[55] AR 553–56.

[56] AR 556.

DISPOSITIVE ORDER - 21

poor concentration.[57] She complained of depression and anxiety again in February 2024, noting she had tried several other "hypnotic like medications" to help her sleep, and PA Robles continued her on hydroxyzine.[58] She continued experiencing insomnia, so PA Robles increased her medication dosage later that month, but then reduced it when it became too sedating at an appointment in April 2024 where Plaintiff continued to complain of anxiety and depression.[59] In July 2024, she was still experiencing depression, anxiety, and insomnia due to mental disorder, and PA Robles noted he was discontinuing medication because Plaintiff was seeking nonpharmacological management for her mental health.[60] Based on his treatment, PA Robles believed her agitation and insomnia were side effects of

---

[57] AR 765–66.

[58] AR 759–60.

[59] AR 743–44, 754–55.

[60] AR 729.

DISPOSITIVE ORDER - 22

prednisone that, combined with other impairments, would cause her to be off-task and miss a substantial amount of work.[61]

During this same time, Plaintiff was receiving regular mental-health counseling from Frontier Behavioral Health.[62] On intake, she wanted to address "chronic anxiety, depression, and sleep issues," with the goal of reducing her anxiety "from a 6 or 7 to a 4" and "not to be as emotional and drive [her]self insane."[63] She reported feeling overwhelmed and panicking "about the dumbest things," which she suspected may be a side effect of prednisone.[64] She was assessed with "excessive anxiety/worrying" (and later generalized anxiety disorder) that was difficult to control, difficulties concentrating, irritability, and sleep disturbances.[65] In May 2024, she reported to her provider that she felt highly anxious, had decreased motivation, always felt hopeless,

---

[61] AR 675–77.

[62] *See* AR 678–90.

[63] AR 686, 689.

[64] AR 687.

[65] AR 683, 687–88.

DISPOSITIVE ORDER - 23

had increased agitation and difficulties sleeping, sometimes isolated herself, and lacked energy and focus.[66] Her provider continued noting anxiety, constant insomnia, and frequent agitation through July 2024.[67]

Meanwhile, Plaintiff was seeing an oncologist for regular treatment of her hemolytic anemia. As relevant, her oncologist noted in August 2024 that Plaintiff has "significant anxiety" related to changes in her prednisone therapy.[68] She was anxious and reluctant about tapering her prednisone because she had immediate hemolysis with symptomatic anemia when she tried reducing her dose in the past.[69]

On this record, substantial evidence does not support discounting NP Anders' opinion that Plaintiff was psychologically limited in her ability to attend and complete work as inconsistent with the overall record. Without any consideration of the mental-health evidence

---

[66] AR 682.

[67] AR 678–82.

[68] AR 771.

[69] AR 771.

DISPOSITIVE ORDER - 24

discussed above, the RFC without any absenteeism or psychological-interruption limitations is not supported by substantial evidence.

Turning to PA Robles, he reached similar opinions about how Plaintiff's mental symptoms, whether due to anxiety/agitation or insomnia as a side effect of prednisone, would impact her ability to attend and complete work.[70] The ALJ discounted PA Robles' entire opinion, which also remarked on the possibility of her anemia worsening if she returned to work, as speculative.[71] Substantial evidence does not support the ALJ's rejection. PA Robles' opinion regarding how Plaintiff's agitation, anxiety, and insomnia, unrelated to the possible worsening of anemia, was not speculative, or at least was only as speculative as any medical opinion regarding how mental health would affect a claimant. The ALJ correctly noted that Plaintiff was not hospitalized during the at-issue period and her hematocrit was

---

[70] AR 675–77.

[71] AR 26–27.

DISPOSITIVE ORDER - 25

stable on prednisone,[72] but that says nothing about how Plaintiff's mental symptoms would impact her ability to work.

Finally, the ALJ found Dr. R.'s opinion persuasive, noted his opinion that Plaintiff's anxiety "would impact her ability to maintain adequate attendance and complete a normal workday/workweek within normal tolerances of a competitive workplace, but these limits do not preclude her ability completely," and yet did not, according to Plaintiff, incorporate any of that particular finding into the RFC. By limiting Plaintiff to simple tasks and working in two-hour intervals, the ALJ rationally incorporated Dr. R.'s opinion. Even so, Dr. R.'s opinion—as to moderate mental limitations and impairments in attending and completing work—is consistent with the overall record as discussed above. The ALJ on remand will have the opportunity to reevaluate the opinion in light of, and along with, the rest of the opinions and evidence.

---

[72] *See* AR 771.

DISPOSITIVE ORDER - 26

**B.      Symptom Reports: The issue is moot.**

Plaintiff also argues the ALJ harmfully erred by rejecting her subjective complaints without clear and convincing reasons. The Court need not address this issue because it has already determined that remand for further proceedings is appropriate. On remand, the ALJ will conduct the sequential evaluation anew and evaluate Plaintiff's testimony in light of the overall record and the medical opinions. The Court notes, however, that the ALJ rejected Plaintiff's testimony for many of the same reasons provided for rejecting the medical opinions, which the Court has explained were not supported by substantial evidence. For remand purposes, the Court reminds the ALJ that the "clear and convincing" standard for rejecting subjective testimony in the Ninth Circuit is "the most demanding required in Social Security cases."[73]

---

[73] *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

DISPOSITIVE ORDER - 27

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 11th day of August 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 28